## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JOSEF BROBST,**                                        CASE NO. 3:23 CV 902

      Plaintiff,

      v.                                              JUDGE JAMES R. KNEPP II

**SAFARILAND LLC, et al.,**

      Defendants.                                     **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Currently pending before the Court is Plaintiff Josef Brobst's motion to remand this case to the Hancock County Court of Common Pleas. (Doc. 17). Defendants Safariland LLC, Maui Acquisition Corporation, and Cadre Holdings, Inc., opposed (Doc. 20), and Plaintiff replied (Doc. 22). Defendant Vance Outdoors, Inc., has not filed any brief related to the pending motion.

For the reasons discussed below, the Court grants the motion to remand.

### BACKGROUND

<u>Complaint</u>

Plaintiff, an Ohio Highway Patrol Trooper filed suit in the Hancock County, Ohio, Court of Common Pleas asserting state law claims arising out of the discharge of his service weapon into his leg while it was holstered during the course of his employment. (Doc. 1-2). He brings claims against Safariland, Maui, Cadre, and Vance. *Id.*

Among other things, the Complaint asserts

Defendant Vance Outdoors (hereinafter "Vance") is Safariland's agent and distributor in Ohio. Here, Vance was not and is not a passive distributor or mere conduit that just shipped or sold holsters off the shelf. Rather, on its own behalf and by agreement with Safariland LLC to double as its representative, Vance

directly bid for, negotiated, and sold a large quantity of guns, weapon lights and the paired holsters, and supplied the defective holster at issue to Trooper Brobst at the Findlay Post of the Ohio Highway Patrol. More specifically, Vance directly bid for, extensively negotiated, and sold approximately 2,225 of the defective model 7360RDS holsters for use by Ohio Highway Patrol personnel, including Trooper Brobst. The 7360RDS models are the high-end product line and referred to as "duty level holsters." They are marketed and sold to be safe and fit for daily "duty level" use by law enforcement. . . . Vance's negligence as set forth herein was a proximate cause of the injuries suffered by Trooper Brobst and thus, Vance is directly liable as a supplier pursuant to O.R.C. § 2307.78 and liable under established Ohio law. Vance maintains primary insurance with a minimum of $1,000,000 aggregate and $500,000 per occurrence for bodily injury, personal injury, wrongful death and property damages.

(Doc. 1-2, at ¶ 8). It further asserts that "Vance is an authorized representative, agent, and distributor for Safariland, including specifically with respect to Trooper Brobst's holster." *Id.* at ¶ 15.

Plaintiff brings products liability claims under the Ohio Products Liability Act ("OPLA") and contractual warranty claims regarding the Safariland holster. The Complaint asserts six claims. As is relevant here, Counts III and V are asserted against, *inter alia*, Vance.

Count III – failure to warn – is brought against all Defendants and alleges Plaintiff's holster was defective "due to inadequate warning and instruction of the risks associated with the holster when it left Defendants' control." *Id.* at ¶ 75. It contends all Defendants knew or should have known of the risks associated with the failure of the holster when used in the line of duty, and in fact, Defendants "sold the holsters to law enforcement with the intended purposes of use in situations of heavy stress and force, including in training and in the line of duty." *Id.* It alleges Defendants "failed to provide the warning that a manufacturer or seller exercising reasonable care would have provided in light of the holster being a life-safety device that would cause the very type of severe danger and injury (or death) that occurred here." *Id.* at ¶ 77.

Count V – breach of the implied warranty of merchantability – is also brought against all Defendants and asserts Plaintiff's holster "came with an implied warranty that it was merchantable, fit, and safe for its ordinary and intended use", and that it was not merchantable "for the daily life-critical 'duty' use for which it was marketed and sold, and in fact failed in the line of duty to perform as intended." *Id.* at ¶¶ 86-95.

Contract

The holster at issue was sold to the Ohio State Highway Patrol pursuant to a contract between Vance (the "Contractor", *see* Doc. 17-2, at 16) and the State of Ohio. *See* Doc. 17-2 ("Mandatory Use Contract for Firearms, Ammunition, Holsters and Related Items for the Ohio State Highway Patrol and Ohio Department of Public Safety Law Enforcement Divisions."). It is a requirements contract and states:

> Agencies are eligible to make purchases of the listed supplies and/or services in any amount and at any time as determined by the agency. The State makes no representation or guarantee that agencies will purchase the volume of supplies and/or services as advertised in the Invitation to Bid.

(Doc. 17-2, at 1). The estimated number of holsters required ("EST USAGE") attached to the Bid was 2225 (1950 right-handed, 275 left-handed). (Doc. 17-3, at 2).

The Standard Terms and Conditions of the contract (*see* Doc. 17-2, at 1), provide, *inter alia*,

> **V. LIABILITY PROVISIONS**
>
> **A. GENERAL REPRESENTATIONS AND WARRANTIES**. The Contractor warrants that:
> * * *
> 4. The Deliverables are merchantable and fit for the particular purpose described in this Contract and will perform substantially in accordance with its user manuals, technical materials, and related writings.
> * * *
> If any work of the Contractor or any Deliverable fails to comply with these warranties, and the Contractor is so notified in writing, the Contractor will correct

such failure in a commercially reasonable time or as specified in the Contract. If the Contractor fails to comply, the Contractor will refund the amount paid for the Deliverable. The Contractor will also indemnify the State for any direct damages and claims by third parties based on breach of these warranties.

**D. AUTOMOBILE AND GENERAL LIABILITY INSURANCE.** * * * Contractor shall carry Commercial General Liability Insurance coverage with a $1,000,000 annual aggregate and a $500,000 per occurrence limit for bodily injury, personal injury, wrongful death and property damage. * * * Such policy shall designate the State of Ohio as an Additional Insured, as its interest may appear. The policy shall also be endorsed to include a blanket waiver of subrogation and a statement that the Contractor's commercial general liability insurance shall be primary over any other coverage.

(Doc. 17-4, at 6-7).

Removal

Safariland, Maui, and Cadre removed the case to this Court based on diversity jurisdiction. (Doc. 1). In the Notice of Removal, they assert that for purposes of jurisdiction, Plaintiff was a citizen of Ohio, and Safariland, Maui, and Cadre were each citizens of Delaware and Florida. *Id.* at 2. The Notice of Removal then contends Defendant Vance – an Ohio corporation with a principal place of business in Ohio – was fraudulently joined and thus does not defeat diversity jurisdiction. *Id.* at 3-4. They further contend that a fraudulently joined defendant need not consent to the removal of an action, and removal is proper. *Id.* at 4. Attached to the Notice of Removal is a Declaration of Doug Vance, President of Vance Outdoors. (Doc. 1-5). Therein, Doug Vance avers that (1) Vance Outdoors had not been served at the time of the Declaration; and (2) was a distributor but not manufacturer of the at-issue holster; (2) "[a]t no time with respect to the holster at issue has Vance prepared or provided any written representations, warnings or instructions associated with the . . . [holster] independent from those provided by the manufacturer"; and (3) "at no time with respect to the holster at issue did Vance

have any knowledge of any alleged risks or defects associated with the . . . holster not otherwise provided by the manufacturer to the customer." *Id.* at 1-2.[1]

Plaintiff now moves to remand, arguing this Court lacks diversity jurisdiction over the matter.

## STANDARD OF REVIEW

When a defendant removes an action from state court to federal court, the federal court has subject-matter jurisdiction only if it would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Here, Defendants claim this matter falls within the Court's original diversity jurisdiction under 28 U.S.C. § 1332(a). For that to be true, two conditions must be met: (1) the parties must be completely diverse; and (2) the amount in controversy must exceed $75,000. *Id.* The party seeking removal jurisdiction bears the burden of stating facts in its notice of removal demonstrating an entitlement to removal jurisdiction. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

"When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) (citation omitted). Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation and citation omitted). A defendant is fraudulently joined if it is "clear that there can be no recovery under the

---

1. As Plaintiff points out, the statement that Vance had not been served at the time of removal was inaccurate, as shown by Defendants' own filings accompanying the Notice of Removal. He therefore argues the entire Declaration should be stricken. The Court declines to strike the Declaration.

law of the state on the cause alleged or on the facts in view of the law". *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted).

When deciding fraudulent joinder allegations, the Court applies "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 492 (citing *Alexander*, 13 F.3d at 949). If there is a "colorable basis for predicting that a plaintiff may recover against non-diverse defendants", the Court must remand. *Id.* "The court may look to material outside the pleadings for the limited purpose of determining whether there are undisputed facts that negate the claim." *Casias*, 695 F.3d at 433 (internal quotation and citation omitted). The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." *Coyne*, 183 F.3d at 492 (quoting *Alexander*, 13 F.3d at 949). "[T]he proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). "For these reasons, the burden to demonstrate fraudulent joinder 'is indeed a heavy one.'" *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 807 (N.D. Ohio 2021) (quoting *King v. Centerpulse Orthopedics, Inc.*, 2006 WL 456478, at *2 (N.D. Ohio)).

Finally, all doubts as to the propriety of removal are resolved in favor of remand. *Casias*, 695 F.3d at 433; *see also First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 464 (6th Cir. 2002) (removal statutes are to be narrowly construed as they were "adopted in order to restrict rather than expand the scope of removal from the state courts.").

DISCUSSION

Plaintiff moves to remand, arguing Vance was not fraudulently joined and as such, its presence in this suit prevents this Court from exercising diversity jurisdiction because Vance and Plaintiff are both residents of Ohio. (Doc. 17). Removing Defendants respond that removal was proper because Plaintiff's claims against Vance are meritless. For the reasons set forth below, the Court finds remand is required.

<u>Safariland LLC's Citizenship</u>

Although Plaintiff does not highlight it, at the outset the Court notes that the Notice of Removal asserts Safariland is "a limited liability company incorporated in Delaware with a principal place of business in Florida" (Doc. 1), and points to its Corporate Disclosure (Doc. 1-3). That Corporate Disclosure states that Safariland LLC is "a wholly-owned subsidiary of Defendant Cadre Holdings, Inc." (Doc. 1-3).

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction". *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). "[A] limited-liability company . . . is a citizen of every state of citizenship of its members." *Pitt Excavating, LLC v. Pitt*, 603 F. App'x 393, 396 (6th Cir. 2015). Courts have found a statement that an LLC is a wholly-owned subsidiary is generally not sufficient to evaluate whether diversity jurisdiction is proper. *See Traffas v. Biomet, Inc.*, 2020 WL 1467313, at *2 (D. Kan.) ("[A]s the court's Show Cause Order explained . . ., that the Complaint's allegations that various Biomet LLCs are wholly-owned subsidiaries do not permit the court to conclude that plaintiff and defendants are diverse for purposes of subject matter jurisdiction."); *Marks v. Wal-Mart Louisiana, LLC*, 2016 WL 2654372, at *2 (W.D. La.) (holding assertion that LLC was a wholly-owned subsidiary of corporation did not permit court to determine LLC's citizenship for purposes of diversity

7

jurisdiction because corporation "may or may not be a member—or the sole member—of the [the LLC]"); *Advanced Techs. & Installation Corp. v. Nokia Siemens Networks US, LLC*, 2011 WL 198033, at *3 (D.N.J.) (granting motion for reconsideration because court earlier had committed legal error by concluding that a wholly-owned subsidiary necessarily has just one member).

As such, Removing Defendants have failed to provide the information necessary to conclusively determine the citizenship of Safariland LLC and evaluate whether it is diverse from Plaintiff. Nevertheless, because the Court finds this resolving this defect in the Notice of Removal would not alter the outcome, it turns to the issue presented by the parties.

Fraudulent Joinder

The relatively narrow determinative question presented is whether Plaintiff's Complaint presents a "colorable basis" for recovery against Vance. If it does, remand is required as Vance and Plaintiff are non-diverse. If it does not, removal was proper pursuant to fraudulent joinder principles. As noted above, Plaintiff brings two claims against Vance: Counts III (OPLA Failure to Warn) and V (Implied Warranty). For the reasons discussed below, the Court finds the Complaint presents a colorable basis for recovery against Vance on the failure to warn claim and thus remand is required.

Removing Defendants first argue Plaintiff only pled a *manufacturer* failure to warn claim and not a *supplier* failure to warn claim, and as Vance is not a manufacturer, the Complaint necessarily fails to state a colorable claim against Vance. They further contend that even if such a supplier failure to warn claim is pled, Vance has made no independent representations regarding the holster to support such a claim. In his motion and reply, Plaintiff contends Vance

8

has made such representations and that the Complaint pleads a supplier claim. Both parties submit evidence outside the pleading in support of their arguments.

Although Removing Defendants are correct that the heading of Count III only references Ohio Revised Code § 2307.76, which addresses the manufacturer liability, Plaintiff points out that the Complaint earlier asserts: "Vance is directly liable as a supplier pursuant to O.R.C. § 2307.78 and otherwise under established Ohio law." (Doc. 1-1, at ¶ 8). And the first paragraph under Count III expressly incorporates preceding paragraphs of the Complaint. *Id.* at ¶ 74. Further, the assertions under Count III address claims against both a manufacturer and supplier (or "seller"). *Id.* at ¶¶ 77-78. As such, the Court rejects Removing Defendants' argument that the Complaint does not set forth a claim for failure to warn against a Vance as a supplier/seller.

Next, Removing Defendants contend Plaintiff cannot establish a claim for supplier liability against Vance because Vance made no independent representations regarding the holster. They argue any representations came directly from Safariland, not Vance, and as such, there is no colorable claim against Vance. They further contend that a supplier cannot be liable if it "never had physical control of the product at issue." (Doc. 20, at 7).

A supplier may be liable under the OPLA where (a) the supplier was negligent and its negligence proximately caused injury; or (b) the product did not conform to a representation the supplier made when the product left its control and that representation and the failure to conform to it proximately caused injury. Ohio Rev. Code § 2307.78(A). The OPLA further defines "representation" as "an express representation of material fact concerning the character, quality, or safety of a product." Ohio Rev. Code § 2307.71(A)(14). And a "supplier" is "[a] person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends,

packages, labels, or otherwise participates in the placing of a product in the stream of commerce." Ohio Rev. Code § 2307.71(A)(15)(a)(i).

Removing Defendants are correct that Ohio courts hold that a supplier cannot be held liable under the OPLA when the supplier makes no independent representations regarding the product or does not act negligently. *See, e.g.*, *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 809 (N.D. Ohio 2021) ("Liability under this statute requires independent or express conduct of a supplier. That is, the supplier must make a representation or act negligently.") (citing *Thompson v. Sunbeam Prods.*, 2011 WL 4502049, at *13-14 (S.D. Ohio); *Welch Sand & Gravel v. O&K Trojan*, 107 Ohio App. 3d 218, 228-29 (Ohio Ct. App. 1995)). They further contend Vance cannot be held liable because it never had control of the product.

*Control*

Removing Defendants contend it is undisputed that Safariland shipped the holsters directly to the Ohio State Highway Patrol, and they argue Vance's lack of control over the holsters themselves demonstrates there is no viable claim against Vance. For this proposition, they cite an attached Order Acknowledgment record showing an Order for 1900 holsters as "Sold To" Vance, but with a "Ship To" address of "OSHP Academy." (Doc. 20-2). In response, Plaintiff argues the records are "partial" – in that they only account for 1,900 of the 2,225 ordered holsters – and correctly points out the records are unauthenticated. (Doc. 22, at 7). He further argues that "what appears to be an attempted syllogism that if Safariland shipped the holsters, Vance did not make independent representations, simply does not hold." *Id.*

Removing Defendants rely on *Stiner v. Amazon.com, Inc.*, 162 Ohio St. 3d 128 (Ohio 2020). In *Stiner*, the Ohio Supreme Court elaborated on the definition of "supplier." In that case, the plaintiff sought to hold Amazon liable for items advertised on its website by a third-party

10

seller. The third-party seller "had sole responsibility for the fulfillment, packaging, labeling, and shipping of the product directly to customers . . . decided what to sell on Amazon, and by agreement, took on the responsibility of sourcing the product from the manufacturer until it reached the end user," and Amazon "ha[d] no relationship with the manufacturer or entities in the seller's distribution channel". 162 Ohio St. 3d at 133. The Court found "Amazon's role in the chain of distribution is not sufficient to trigger the imposition of strict liability for defective products sold by third-party vendors on its marketplace." *Id.* at 134; *see also Fox v. Amazon.com, Inc.*, 930 F.3d 415, 424-25 (6th Cir. 2019) (applying Tennessee products-liability law and finding Amazon could not be held liable for a defective hoverboard sold on its website because it had not chosen to offer the item for sale, had not set the price, and had not made any representations about the safety or specifications of the product). In *Stiner*, the Ohio Supreme Court ultimately defined the term "supplier" to only include persons who "exercise a requisite level of control over a product," which may include "actions such as the selection, possession, maintenance, and operation of the product." 162 Ohio St. 3d at 132.

Defendants overstate the holding of *Stiner* as requiring physical control of the product. (Doc. 20, at 7). This is incorrect. *See, e.g.*, *Hall*, 541 F. Supp. 3d at 808 ("[T]he statutory text does not require, as Defendants argue, physical control over the product at any particular point in the supply chain[.]"). In *Hall*, a case on which Defendants rely to assert fraudulent joinder of a supplier, the Court found that a medical device distributor's admission in their answer that they distributed the product and "negotiated pricing with hospitals and sold directly to them" was sufficient to show the distributor Defendants "are suppliers within the meaning of the statute" and found "level of involvement with the product clears the floor the Ohio Supreme Court set in *Stiner* and differs materially and considerably from that of Amazon.com in that case." *Id.* at 808-

11

09; *see also Kozak v. Archer-Daniels-Midland Co.*, 2023 WL 1930559, at *3 (N.D. Ohio) ("The facts currently available indicate that Plaintiffs may have colorable claims against Defendant Steele if he were considered an independent contractor and supplier subject to OPLA liability given his role in facilitating the sale of the product.")

The same analysis applies here. Plaintiff's Complaint asserts Vance "directly bid for, negotiated, and sold" various items including the holsters at issue (Doc. 1-2, at ¶ 8), and Vance's answer *admits* "it is a distributor and/or supplier of Safariland in Ohio and admits it has bid for and distributed guns, weapon lights, and paired holsters . . . in specific types and quantities that will be disclosed in discovery as alleged in that paragraph" (Doc. 21, at ¶ 4). Vance set the price and negotiated the terms of the contract. This is significantly different than Amazon and a third-party seller. The Court therefore finds it is at least arguable under Ohio law that Vance falls within the definition of supplier and had the requisite "control" over the product. And to the extent it is not clear, the Court must resolve that ambiguity in Plaintiff's favor at this juncture. *Coyne*, 183 F.3d at 492.

*Representations*

Removing Defendants next argue Vance cannot be held liable as a supplier because it made no "independent representations" regarding the holsters. Pointing to the language regarding warranties and general liability insurance in the Standard Terms and Conditions appended to the contract, Plaintiff responds: "Vance directly warranted the holsters *in its own name* as being merchantable and fit for their particular purpose, agreed to refund the purchase price if they were not (Safariland's warranty is limited to 'repair and replacement' and does not include refund as an option), agreed to indemnify the state for damages arising from any breaches, and more, Vance also agreed to provide an additional first layer of product liability insurance of $1 million

12

through Cincinnati Insurance." (Doc. 22, at 6-7) (emphasis in original) (footnote omitted) (citing Doc. 17-4, at 6, 7; Doc. 1-2, at ¶ 8).

At core, therefore, the question is whether the terms of the contract between Vance and the State of Ohio amount to "independent representations" under the OPLA. Again, the OPLA defines "representation" as "an express representation of material fact concerning the character, quality, or safety of a product." Ohio Rev. Code § 2307.71(A)(14).

The provision of the contract between Vance and the State of Ohio provides: "The Deliverables are merchantable and fit for the particular purpose described in this Contract and will perform substantially in accordance with its user manuals, technical materials, and related writings." (Doc. 17-4, at 6). Although Defendants are correct that the second part of this sentence seemingly refers to representations directly from Safariland ("user manuals, technical materials, and related writings"), the first part is a representation by Vance itself ("are merchantable and fit for the particular purpose described in this Contract"). And the Contract's purpose is clearly to provide the items for law enforcement use (which is the purpose for which, specifically, Plaintiff alleges they were not fit).

The caselaw cited by Defendants to argue Vance made no independent representations is factually distinguishable as the plaintiffs in those cases did not point to any independent representations. For example, in *Hall v. OrthoMidwest, Inc.*, the court found fraudulent joinder of a supplier where the supplier did not design, prepare any warnings, or make any interdependent representations. 541 F. Supp. 3d at 810 ("Here, the record contains no evidence any Distributor Defendant made independent representations that might occasion liability. Again, Plaintiff fails to point to any evidence in the record in response to the declarations the Distributor Defendants submitted."). By contrast here, as noted above, Plaintiff has pointed to language in

the contract that at least arguably, or in the words of fraudulent joinder, "colorably" constitutes an independent representation.

Once again, the standard applied for fraudulent joinder is whether the Complaint presents a "colorable claim"; this is a standard "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 695 F.3d at 433. Defendants burden to prove fraudulent joinder 'is . . . a heavy one.'" *Hall*, 541 F. Supp. 3d at 807 (quoting *King*, 2006 WL 456478, at *2). And the Court is mindful that it must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party," *Coyne*, 18 F.3d at 492, and resolve any doubts as to the propriety of removal in favor of remand, *Casias*, 695 F.3d at 433.

The Court finds the Complaint presents a colorable claim against Vance under the OPLA, and Removing Defendants have not established that "there are undisputed facts that negate the claim." *Casias*, 695 F.3d at 433. As such, Removing Defendants have not met their burden to establish fraudulent joinder. Because Vance and Plaintiff are both Ohio residents, this Court does not have jurisdiction under 28 U.S.C. § 1332 and Plaintiff's motion to remand must be granted.[2]

Attorney Fees

Plaintiff also requests attorney fees associated with the removal attempt. He argues the Removing Defendants filed an affidavit with demonstrably incorrect assertions, and "did not read the Contract at issue before filing its anemic and unsupported Notice of Removal." (Doc. 17, at 13).

---

2. Because the Court finds Count III presents a colorable claim against Vance, it need not reach the parties' arguments regarding whether the UCC implied warranty claim (Count V) presents a colorable claim against Vance.

14

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Conversely, when an objectively reasonable basis exists, fees should be denied."); *see also Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 913 (6th Cir. 2007) (award of attorney fees is inappropriate where defendant's attempted removal was "fairly supportable") (internal quotation omitted). The non-removing party has the burden to "establish that the . . . removal attempt was not objectively reasonable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008).

Upon review, although the Court agrees with Plaintiff that remand is appropriate, the Court finds the removal attempt was fairly supportable, and thus denies Plaintiff's request for attorney fees.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion to Remand (Doc. 17) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that this case be, and the same hereby is, REMANDED to the Hancock County Court of Common Pleas.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

15